**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

George Rudebusch, et. al.,  )          No. 95-CV-1313-PCT-RCB
                            )          No. 96-CV-1077-PCT-RCB
        Plaintiffs,         )          **ORDER**
                            )
vs.                         )
                            )
State  of  Arizona;  Northern)
Arizona University; The Arizona)
Board of Regents,           )
                            )
        Defendants.         )
                            )
_____ )

     Currently pending before the court is plaintiffs' motion for attorneys' fees in the amount of $523,309.50 and costs in the amount of $90,539.52 brought pursuant to 42 U.S.C. § 2000e-5(k). Mot. (doc. 337) at 8.  For the reasons set forth below, the court grants plaintiffs' motion, but not for the requested amounts.

                        ***Background***

     Assuming familiarity with the factual and procedural history of this action, the court will recount only those aspects of this litigation which are relevant to the narrow fees and costs issues

1  which this motion presents.

2      On June 30, 1995, the named plaintiff, George Rudebusch,

3  "along with a class of female and non-minority male professors"

4  sued, among others, then-President of Northern Arizona University

5  ("NAU") "in his individual capacity under 42 U.S.C. §§ 1981 and

6  1983 for equal protection violations[.]"[1]  Rudebusch v. Hughes,

7  313 F.3d 506, 513 (9th Cir. 2002).  Slightly less than a year

8  later, on May 2, 1996, plaintiff Rudebusch and forty white male

9  professors sued NAU and the Arizona Board of Regents under Title

10 VII ("the Title VII action") in a related action, CIV 96-1077.

11 On November 1, 1996, the court consolidated these two actions.

12      During litigation which spanned slightly more than a decade,

13 in a mandate dated December 18, 2003, the Ninth Circuit, *inter*

14 *alia*, affirmed the judgment in favor of defendants in the class

15 action.  See Doc. 344 at 2 (citing doc. 259).  Clearly then, the

16 plaintiffs in the class action were not successful.  The Title

17 VII litigation continued, however.  Eventually, on June 7, 2006,

18 the court granted plaintiffs' cross-motion for summary judgment

19 on the issue of damages in the Title VII action.  Doc. 316 at 23.

20  Thus, unlike the class action, ultimately the plaintiffs were

21 successful in the Title VII action.  Following the submission of

22 additional evidence as the June 7, 2006 order directed, on

23 February 23, 2007, the court entered judgment in plaintiffs'

24 favor in the Title VII action, awarding plaintiffs damages of

25 approximately two million dollars.

26

27    [1]    For ease of reference, hereinafter this case, CIV 95-1313, shall be
referred to as "the class action."

28                          - 2 -

### *Discussion*

Before addressing the merits, the court is compelled to comment upon plaintiffs failure to comply with LRCiv. 54.2 in making this attorneys' fee motion.  This omission is particularly glaring because  both the June 7, 2006, summary judgment order, as well as the judgment reflecting that order, unequivocally state that plaintiffs' request for attorneys' fees was denied because it "was not properly filed in accordance with Local Rule 54.2."  See Doc. 344 at 3; and Doc. 316 at 23.  Thus plaintiffs were specifically advised, not once, but twice, of the necessity of complying with that Rule, yet they did not do so.

For example, plaintiffs did not attach a "Statement of Consultation" to their motion for attorneys' fees as the Local Rules require.  Under LRCiv. 54.2(d)(1), "[n]o motion for [an] award of attorneys' fees will be considered unless" such a Statement is attached to the supporting memorandum.  LRCiv. 54.2(d)(1).  The court will overlook that procedural irregularity this time; but counsel are forewarned that future fee motions must include this Statement, or the court will not consider them.

More significantly, plaintiffs did not submit all of the other "supporting documentation" which LRCiv. 54.2 requires.  See LRCiv. 54.2(d).  Plaintiffs did file supporting affidavits from several attorneys, but those affidavits are of limited use because, for the most part, they pertain only to the issue of the hourly rates sought.  None of those affiants avers, as the Local Rules require, that the attorneys "reviewed and . . . approved the time and charges set forth in the task-based itemized

statement and that the time spent and expenses incurred were reasonable and necessary under the circumstances." <u>See</u> LRCiv. 54(d)(4)©.  Nor did any of the affiants aver that they "exercised 'billing judgment[]'" in accordance with LRCiv. 54(d)(4)©. Finally, none of the affiants "identif[ied] all adjustments, if any, which may have been made, and specifically, . . . state[d] whether the[y] . . . eliminated unnecessary, duplicative and excessive time, [and/or] deleted certain categories of time[.]" <u>See</u> LRCiv. 54(d)(4)©.  The Ninth Circuit has cautioned that district courts "may not 'uncritically' accept the number of hours claimed by the prevailing party, even if actually spent on the litigation[.]"  <u>Carson v. Billings Police Department</u>, 470 F.3d 889, 893 (9th Cir. 2006) (internal quotations, citations and footnotes omitted).  Thus plaintiffs' failure to fully comply with LRCiv. 54.2 made unnecessarily arduous the court's task of ensuring, as it must, "that the time actually spent was reasonably necessary."  <u>See</u> <u>id.</u>  ***I. Attorneys' Fees***

     In accordance with 42 U.S.C. § 2000e-5(k), a district court, "in its discretion, may allow the prevailing party" to recover its "reasonable attorney's fee (including expert fees) as part of the costs" in a Title VII action.  <u>See also</u> <u>Christiansburg Garment Co. v. E.E.O.C.</u>, 434 U.S. 412, 418-19 (1978).  The first inquiry is whether a plaintiff is a "prevailing party" within the meaning of that statute.  <u>See</u> <u>Gerling Global Reinsurance v. Garamendi</u>, 400 F.3d 803, 806 (9th Cir. 2005) (in reviewing an

1  attorneys' fee award under 42 U.S.C. § 1988,[2] "[t]he first issue

2  is whether plaintiffs constitute 'prevailing parties[]')."  The

3  second inquiry pertains to the reasonableness of the fee award.

4      **A.  *"Prevailing Party"***

5      Defendants start from the premise that despite

6  consolidation, the class action and the Title VII action retain

7  their separate identities.  <u>See</u>, <u>e.g.</u>, <u>Boardman Petroleum, Inc.

8  v. Federated Mut. Ins. Co.</u>, 135 F.3d 750, 752 (11th Cir. 1998)

9  ("[C]onsolidation of cases . . . does not strip the cases of

10  their individual identities."); <u>Harrah's Club v. Van Blitter</u>, 902

11  F.2d 774, 775 (9th Cir. 1990) ("The two actions remained separate

12  in identify despite their consolidation for purposes of trial.")

13  Therefore, defendants do not believe that it is "appropriate" to

14  combine those actions for purposes of determining the fees award

15  herein.  <u>See</u> Resp. (doc. 342) at 11.  Based upon that premise,

16  defendants readily concede that "[t]he Title VII plaintiffs are

17  prevailing parties[,]" and thus entitled to recover reasonable

18  attorney's fees under section 2000e-5(k).   <u>Id.</u> at 3.

19      In contrast, because plaintiffs were "unsuccessful" in the

20  class action, defendants contend that plaintiffs were not

21  prevailing parties there.  Consequently, defendants assert that

22

23      [2]     "[T]he attorney's fees provision in 42 U.S.C. § 1988 and . . . .the
    attorney's fees provision in Title VII, § 2000e-5(k), . . . are interpreted to
24  be the same."  <u>Marbled Murrelet v. Babbitt</u>, 182 F.3d 1091, 1095 n.2 (9th Cir.
    1999) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 n. 7 (1983)).  Thus, case
25  law construing section 1988 applies with equal force to this fee motion brought
    pursuant to section 2000e-5(k).  Indeed, the Supreme Court has "declared that the
26  standard announced in *Hensley* [construing § 1988] [is] to be 'generally
    applicable in all cases in which Congress has authorized an award of fees to a
27  'prevailing party.''" <u>Aguirre v. Los Angeles Unified School District</u>, 461 F.3d
    1114, 1118 (9th Cir. 2006) (quoting <u>Hensley</u>, 461 U.S. at 433 n.7).

28                                    - 5 -

1   plaintiffs are not entitled to a statutory fee award in the class

2   action.  Thus, deducting time plaintiffs expended "solely on

3   th[at] unsuccessful" class action, *i.e.* $156,943.75, defendants

4   assert that plaintiffs are entitled to a fee award of "not

5   greater than $243,555.25," or "47% of Plaintiff's total request."

6   Id. at 1 and 11.  "Alternatively," even treating the class action

7   and Title VII actions as one, defendants maintain that

8   "[p]laintiff's limited success in both cases justifies this [same

9   50%] reduction[.]" Id. at 1.

10      Recognizing that they were not prevailing parties in the

11   class action, plaintiffs expressly "concede" that the $156.943.75

12   reduction for fees clearly incurred therein is appropriate.  See

13   Reply (doc. 343) at 1.  Despite that concession, there remains a

14   sizeable discrepancy between the amount of fees which plaintiffs

15   are seeking and those to which defendants believe plaintiffs are

16   entitled.

17      The bulk of that difference arises from what the parties

18   have termed "commingled" fees.  These commingled fees are a

19   result of the fact that when billing, plaintiffs did not

20   distinguish between fees incurred with respect to the Title VII

21   action and those incurred with respect to the class action.[3]   Due

22   ────────────────

23      [3]      Consolidation does not excuse plaintiffs' commingling of time
     because, as mentioned above, despite consolidation, the Title VII and class
     actions retained their separate identities.  Furthermore, in Hensley the Supreme
24   Court directed that attorneys "should maintain billing records in a manner that
     will enable a reviewing court to identify distinct claims[.]"  Hensley, 461 U.S.
25   at 437. Obviously, plaintiffs' billing records in the present case were not kept
     in such a manner.
26      As an aside, the court observes that like the Supreme Court, " the Ninth
     Circuit does not "'view with sympathy any claim that a district court abused its
27   discretion in awarding unreasonably low attorney's fees in a suit in which
     plaintiffs were only partially successful if counsel's records do not provide a

28                                    - 6 -

1  to this "commingling," defendants argue that the "remaining . . .

2  time should be discounted based on the overall success of the two

3  cases."  Resp. (doc. 342) at 9.

4       Examining the remaining commingled time "as if it were

5  expended in the same case[,]" defendants point out that there

6  were a total of 261 plaintiffs.  Id.  Defendants reason,

7  however, that of those 261 plaintiffs, only 40 "obtained relief

8  under one of the claims[]"  – the Title VII claim.  Id.

9  Defendants further reason, because "[o]nly 40" of the plaintiffs,

10 "or 15%, obtained any relief[,] . . . a 50% reduction in the

11 remaining fees sought "is eminently fair[.]"  Id. at 10.  From

12 defendants' viewpoint, plaintiffs' limited relief "could support

13 a much larger reduction[,]" but "the 50% figure more accurately

14 reflects the time and effort spent on Title VII-related issues

15 and common factual issues versus [the class action] issues."  Id.

16 Employing a 50% reduction, defendants calculate that plaintiffs

17 should recover $110,524.75 for the remaining "commingled time[.]"

18 Id.

19      Disregarding the issue of whether the court should view this

20 as one or two actions, plaintiffs counter that a 50% reduction is

21 improper because "the facts and legal theories in the class

22 action . . . were interrelated with the facts and legal theories

23 in the Title VII case."  Reply (doc. 343) at 3.  More

24 specifically, plaintiffs explain that the successful Title VII

25 ─────────────────────

26 proper basis for determining how much time was spent on particular claims[.]'"
   Schwarz v. Secretary of Health & Human Services, 73 F.3d 895, 906 (9th Cir. 1995)

27 (quoting Hensley, 461 U.S. at 437 n. 12) (other quotation marks and citation
   omitted).

28                                    - 7 -

1   claims and the unsuccessful class action claims "both arose out

2   of the same course of conduct: the exclusion of non-minority

3   males from any raises." Id. at 4.  Therefore, plaintiffs contend

4   that a 50% reduction is improper.

5        By the same token though, plaintiffs are willing to concede

6   that a slight reduction of 5% or $11,052.47 is proper.  This

7   minimal reduction represents time which plaintiffs attribute to

8   the "unrelated" part of the class action, i.e. the females' claim

9   that their raise was less than that of the minority males.  Id.

10  This reduction also takes into account "minor expenditures of

11  time to argue, and prepare separate jury instructions for the

12  slightly . . . different legal theories pertaining to the class

13  action[.]" Id.  At the end of the day then, plaintiffs believe

14  that they are entitled to $209,997.03 in attorneys' fees for the

15  "commingled" time, and not the lesser amount of $110,524.75,

16  which defendants are so strongly urging.

17       In addition to the commingled time, the parties disagree

18  with respect to the amount of fees to which plaintiffs should be

19  allowed to recover for time expended by attorney Rosemary Cook.

20  Defendants are seeking a $14,500.00 reduction in her time due to

21  inadequate documentation in 1996.  Plaintiffs did not directly

22  respond to this argument.  Instead, based upon a supplemental

23  affidavit from Ms. Cook, wherein she avers that she worked only

24  on the Title VII action, plaintiffs simply state "that the Court

25  should not exclude the $14,500.00 claim for 1996[.]"  Reply (doc.

26  343) at 4.

27       The court will separately address these disputed issues in

28                              - 8 -

1  the context of determining the reasonableness of the fees sought.

2  It will also address plaintiffs' request, made for the first time

3  in their Reply, that they are entitled to additional fees for

4  time expended since the filing of this motion.  Lastly, the court

5  will address plaintiffs' request for costs.

6       ***B.  Reasonableness of Fees***

7       "To determine reasonable attorney's fees . . . , the

8  district court should first determine the lodestar amount by

9  calculating the number of hours reasonably expended on the

10 litigation multiplied by a reasonable hourly rate." Dang v.

11 Cross, 422 F.3d 800, 812 (9th Cir. 2005) (internal quotation

12 marks, citations and footnote omitted).  "'Th[is] lodestar

13 determination has emerged as the predominate element of the

14 analysis' in determining a reasonable attorney's fee award.'" Doe

15 v. Keala, 361 F.Supp.2d 1171, 1182 (D. Hawai'i 2005) (quoting

16 Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996)).

17 "In determining the appropriate lodestar amount, the district

18 court may exclude from the fee request any hours that are

19 'excessive, redundant, or otherwise unnecessary.'" Welch v.

20 Metropolitan Life Ins. Co., 480 F.3d 942, 946 (9th Cir. 2007)

21 (quoting Hensley, 461 U.S. at 434).

22      Once the court determines the lodestar amount, it "'then

23 assesses whether it is necessary to adjust th[at] presumptively

24 reasonable . . . figure on the basis of the Kerr factors that are

25 not already subsumed in the initial lodestar calculation.'" Aloha

26 Airlines v. Mesa Air Group, Inc., 2007 WL 2320672, at *4

27 (D.Hawai'i  Aug. 10, 2007) (quoting Morales, 96 F.3d at 363-64)

28                              - 9 -

(footnotes omitted).  The original <u>Kerr</u> factors, based upon the
case of the same name, are:  "(1) the time and labor required;
(2) the novelty and difficulty of the questions involved: (3) the
skill requisite to perform the legal service properly; (4) the
preclusion of other employment by the attorney due to acceptance
of the case; (5) the customary fee; (6) whether the fee is fixed
or contingent; (7) time limitations imposed by the client or the
circumstances; (8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the undesirability of the case; (11) the nature and length
of the professional relationship with the client; and 912) awards
in similar cases."  <u>Id.</u>, at *4, n.2 (citing <u>Kerr v. Screen Guild
Extras, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975)).

    In the present case, plaintiffs suggest that the court
consider <u>Kerr</u> factors four, five, six and ten.  <u>See</u> Mot. (doc.
337) at 7.  However, factor six – the fixed or contingent nature
of the fee – is "irrelevant in the fee calculation[.]" <u>EEOC v.
Harris Farms</u>, 97 FEP Cases 1447, 1450 (E.D.Cal. 2006) (citing
<u>City of Burlington v. Dague</u>, 505 U.S. 557 (1992)).  Thus, the
court declines to consider that factor.  Moreover, because
plaintiffs did not analyze how the <u>Kerr</u> factors, which they
mention only in passing, should impact the "presumptively
reasonable lodestar figure," those factors also will not be part
of the court's calculations herein.  <u>Cf.</u> <u>id.</u> (quoting <u>Cairns v.
Franklin Mint Co.</u>, 292 F.3d 1139, 1158 (9th Cir. 2002)) ("[T]he
court 'need not consider all . . . <u>Kerr</u> factors, but only those
called into question by the case at hand and necessary to support

1    the reasonableness of the fee award.'"); <u>Jankey v. Beach Hut</u>,

2    2006 WL 4569361, at *3 (C.D.Cal. 2006) (citing <u>Hensley</u>, 461 U.S.

3    at 363-64) (<u>Kerr</u> "factors irrelevant to the case need not be

4    considered[]").

5         The court's decision not to consider the <u>Kerr</u> factors which

6    plaintiffs identified is justified on the additional basis that

7    only in "exceptional cases" may a "district court . . . adjust

8    the 'presumptively reasonable' lodestar figure based upon th[os]e

9    . . . factors that have not been subsumed in the lodestar

10    calculation." <u>Harris Farms</u>, 97 FEP Cases at 1450 (citing, *inter*

11    *alia*, <u>Dang</u>, 422 F.3d at 812).  The present case is not such a

12    "rare" or "exceptional" case. <u>See id.</u> (citing, *inter alia*,

13    <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>,

14    478 U.S. 546, 565 (1986)).  Thus, there is no need in the present

15    case to "adjust the lodestar upward or downward using a

16    'multiplier' based on factors not subsumed in the initial

17    calculation of the lodestar." <u>Id.</u> (citing, *inter alia*, <u>Blum v.</u>

18    <u>Stenson</u>, 465 U.S. 886, 898-901 (1984)).

19         Certain <u>Kerr</u> factors are "subsumed" in making the initial

20    lodestar calculation.  Those factors are: "'(1) the novelty and

21    complexity of the issues; (2) the special skill and experience of

22    counsel; (3) the quality of representation . . . (4) the results

23    obtained[.]'" <u>Id.</u> (citing, *inter alia*, <u>Blum</u>, 465 U.S. at 898-

24    00).  The final "subsumed" factor, the "results obtained," is

25    the focus of the parties' respective arguments herein.  Thus,

26    following the Ninth Circuit's "favored procedure[,]" this court

27    will "consider the extent of the plaintiff[s'] success in making

28

1  its initial determination of hours reasonably expended at a
2  reasonable rate, and not in subsequent adjustments to the
3  lodestar figure." Id. (citing, *inter alia*, Corder v. Gates, 947
4  F.2d 374, 378 (9th Cir. 1991)).

5  ### 1. Results Obtained

6      As just noted, calculation of the lodestar "requires the
7  [c]ourt to consider the 'results obtained'[.]" Keala, 361
8  F.Supp.2d at 1185 (citing Morales, 96 F.3d at 364). In fact, the
9  Supreme Court deems "the degree of success obtained[]" to be "*the
10 most critical factor* in determining the reasonableness of a fee
11 award[.]" Hensley, 461 U.S. at 436 (emphasis added). The
12 "results obtained" factor "is particularly crucial where[,]" as
13 here, "a plaintiff is deemed 'prevailing' even though he
14 succeeded on only some of his claims for relief." Id. at 434;
15 see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,
16 489 U.S. 782, 790 (1989) (emphasis in original) ("[T]he *degree* of
17 the plaintiff's success in relation to the other goals of the
18 lawsuit is a factor critical to the determination of the size of
19 a reasonable fee[.]" Succinctly put, "[t]he result is what
20 matters." Id. at 435 (footnote omitted).

21  ### a. Related v. Unrelated Claims

22      Based upon Hensley and its progeny, the Ninth Circuit has
23 adopted "a two-step process for determining the appropriate
24 reduction for 'limited success'[.]" Webb v. Sloan, 330 F.3d 1158,
25 1169 (9th Cir. 2003). The first step looks at "whether the
26 plaintiff fail[ed] to prevail on claims that were unrelated to
27 the claims on which he succeeded[.]" Dang, 422 F.3d at 812

28                              - 12 -

1   (internal quotation marks and citations omitted).  Under the

2   first step a district court must "determine whether the

3   successful and unsuccessful claims were unrelated." Id. at 813

4   (citation omitted).  "Claims are *unrelated* if the successful and

5   unsuccessful claims are distinctly different *both* legally *and*

6   factually, . . . ; claims are related, however, if they involve a

7   common core of facts *or* are based on related legal theories."

8   Id. (internal quotation marks and citations omitted) (emphasis in

9   original).  Therefore, as the Ninth Circuit has stressed, there

10  is no "*require*[*ment*] [of] commonality of both facts *and* law

11  before concluding that unsuccessful and successful claims are

12  related." Webb, 330 F.3d at 1168 (emphasis in original).  "At

13  bottom, the focus is on whether the unsuccessful and successful

14  claims arose out of the same course of conduct." Dang, 422 F.3d

15  at 813 (internal quotation marks and citation omitted).  "If they

16  did not," then the Ninth Circuit has held that "the hours

17  expended on the unsuccessful claims should not be included in the

18  fee award." Id. (citations omitted).

19      In the present case, defendants readily admit that this

20  "relatedness test is met[]" in that both the Title VII and the

21  class actions "arose from a common core of facts – the 1993

22  equity increases[.]" Resp. (doc. 342) at 11.  In light of that

23  concession, with which the court concurs, it will not reduce

24  plaintiffs' fee award under the first step of the Ninth Circuit's

25  analysis for deciding the "appropriate reduction for limited

26  success." See Webb, 330 F.3d at 1169.

27  . . .

28

- 13 -

**_b.   "Significance of Overall Relief_"**

Having found that the Title VII and class action claims are related, the court proceeds to step two of the analysis wherein it "'evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" Dang, 422 F.3d at 813 (internal quotation marks and citation omitted).  "If the plaintiff obtained excellent results, full compensation may be appropriate, but if only partial or limited success was obtained, full compensation may be excessive[.]" Schwarz, 73 F.3d at 902 (internal quotation marks and citations omitted).  "There is no precise rule or formula for making these determinations." Hensley, 461 U.S. at 436.  At the same time though, the Ninth Circuit recognizes that "[a] discretionary reduction to reflect limited success against some of the defendants is appropriate at this step[;]" Keala, 361 F.Supp.2d at 1185 (citing Webb, 330 F.3d at 1169); but the Ninth Circuit "does not sanction a proportionate reduction of the lodestar amount based on the number of defendants dismissed." Id. at 1185 n. 17.  "At the heart of this inquiry is whether Plaintiff's accomplishments . . . justify the fee amount requested." Thomas v. City of Tacoma, 410 F.3d 644, 649 (9th Cir. 2005) (internal quotation marks and citation omitted).

Defendants did not directly address this second step. Instead, they harken back to the general argument that plaintiffs were only "partially successful" in that 221 of the 261 plaintiffs "obtained no relief[,]" and so there should be a 50% fee reduction.

1    Similarly, plaintiffs did not mention, let alone analyze,

2   the "significance of the overall relief" obtained.  Rather,

3   plaintiffs devoted their Reply primarily to the "relatedness"

4   issue, which is puzzling given defendants' concession on that

5   point.  Plaintiffs' failure to address the second step also is

6   troubling because "[t]he bulk of discretion retained by the

7   district court lies in th[is] second, . . . , inquiry." Thomas,

8   410 F.3d at  649-50 (citation omitted); see also Hensley, 461

9   U.S. at 437 ("[T]he district court should make clear that it has

10  considered the relationship between the amount of the fees

11  awarded and the results obtained.") For this same reason,

12  defendants' failure to directly address this second step is

13  equally troubling.

14    Even with only minimal input from the parties, given its

15  intimate familiarity with this consolidated action (having

16  presided over it for more than a decade), the court can assess

17  the "significance of the overall relief" which plaintiffs

18  achieved. Looking at the relief obtained *vis-a-vis* the hours of

19  commingled time, a one-third reduction (rather than the 50%

20  reduction which defendants urge or the 5% reduction plaintiffs

21  urge) in the fees sought for that time is appropriate.  A one-

22  third reduction results in a fee award of $ 147,366.34 for the

23  commingled time.   This reduction is not, in any way, to be

24  construed as diminishing the favorable outcome which plaintiffs'

25  obtained in the Title VII action.  In fact, plaintiffs' success

26  in that action is resulting in an award for *all* of the fees which

27  they are seeking for time spent on that action from February 18,

28

1    2003,[4] to the present.

2        The court cannot ignore the fact, however, that plaintiffs

3    proceeded at their peril by not heeding the Supreme Court's

4    directive that billing records be kept "in a manner that will

5    enable a reviewing court to identify distinct claims." See

6    Hensley, 461 U.S. at 437.  Had plaintiffs maintained their

7    billing records in accordance with Hensley, it would have been

8    possible to parse the Title VII time from the class action time.

9    Because that was not done, however, even though the Title VII and

10   class action claims are related, the court finds an across-the-

11   board percentage cut is necessary to reflect plaintiffs' partial

12   success on the claims overall.

13       This approach comports with Schwarz, wherein the Ninth

14   Circuit affirmed a district court's award of only 25% of the fees

15   which plaintiff sought because she "made no effort to identify

16   for the . . . court which of the hundreds of hours were spent on

17   the unsuccessful claims," and where she "always maintained that

18   she was entitled to all hours expended by [her] attorneys."

19   Schwarz, 73 F.3d at 905, n.3.  Here, a reduction of one-third is

20   mandated because the initial lodestar figure for the commingled

21   time yields "an excessive amount[]" given plaintiffs' partial

22   success.  See Hensley, 461 U.S. at 436.  More particularly,

23   plaintiffs are seeking $221,049.50 in fees for the commingled

24

25           [4]      On this date, the Ninth Circuit "affirmed the defense judgment in the
26   class action[,]" and reversed the defense judgment in the Title VII action.
     Resp. (doc. 342) at 5 (citation omitted).  Clearly then, because the Title VII
27   action is the only one which survived, all fees incurred after this date are
     attributable solely to that action.

28                              - 16 -

1    time.

2        That is an excessive amount, in this court's opinion, given

3    that some of that time necessarily was expended on the class

4    action where plaintiffs did not prevail against any of the

5    defendants. Although not dispositive, as defendants repeatedly

6    note, the fact that in the end only a limited number of

7    plaintiffs prevailed in this consolidated action, also supports

8    this one-third fee reduction.  A one-third reduction, in contrast

9    to the 50% reduction which defendants so strongly urge, also

10   takes into account the fact that some of the fees incurred would

11   have been incurred even if plaintiffs had only brought their

12   successful Title VII action.

13       The court is fully cognizant that it has "resort[ed] to a

14   mathematical formula," which, in the words of the Ninth Circuit,

15   might be deemed "crude[.]"  See Schwarz, 73 F.3d at 905.  Such an

16   approach was expressly endorsed by the Ninth Circuit in Schwarz,

17   however, when it held that the district court did not abuse its

18   discretion in proceeding in precisely this way.  See id.

19   Moreover, "[l]itigants who make no effort to apportion fees among

20   compensable and non-compensable claims," such as the plaintiffs

21   herein, "run the risk" that in reducing the fees sought "a court

22   will adopt such an approach."  See Cambridge Electronics Corp. v.

23   MGA Electronics, Inc., 2005 WL 927179, at *8 (C.D. Cal. 2005).

24   For all of these reasons, the court finds that at the end of the

25   day a one-third reduction corresponds with plaintiffs' success in

26   this litigation.

27   . . .

28
                                  - 17 -

### *2.  Attorney Cook*

Part of the court's task in calculating the fee award is to ensure that the party seeking the fees meets its "burden of documenting the hours expended in the litigation and" that that party has "submit[ted] evidence supporting those hours and the rates claimed."  See Welch, 480 F.3d at 946(citing Hensley, 461 U.S. at 433).  Consequently, "[w]here the documentation is inadequate," the Supreme Court authorizes district courts "to reduce the award accordingly."  Hensley, 461 U.S. at 433.  The Local Rules echo this requirement, providing that "[i]f the time descriptions are incomplete, or if such descriptions fail to adequately describe the service rendered, the court may reduce the award accordingly."  LRCiv. 54.2(e)(2).

In terms of supporting documentation, although the Ninth Circuit has "a preference for contemporaneous [time] records, [it] ha[s] never held that they are absolutely necessary[]" as a prerequisite to a statutory fee award.  Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (internal quotation marks and citation omitted).  Thus, counsel need not "record in great detail how each minute of his [or her] time was expended."  See Hensley, 461 U.S. at 437, n.12.  Instead, the Ninth Circuit has held that "plaintiff's counsel can meet his burden - although just barely - by simply listing his hours and identify[ing] the general subject matter of his time expenditures."  Fischer, 214 F.3d at 1121 (internal quotation marks and citations omitted); see also Keala,  361 F.Supp.2d at 1184 (internal quotation marks and citation omitted) ("[T]he cases . . . require that there be

1    [an] adequate description of how the time was spent, whether it
2    be on research or some other aspect of the litigation[.]")
3    Basically, the records supporting an attorneys' fee motion
4    "should be comparable to those that a private attorney would
5    present to a client to substantiate a fee."  Merrifield v.
6    Miner's Inn Restaurant & Lounge, 2006 WL 4285241, at *10
7    (E.D.Cal. 2006)(citing, *inter alia*, Evers v. Custer County, 745
8    F.2d 1196, 1205 (9th Cir. 1984)), adopted in full, 2007 WL 841791,
9    at *1 (E.D.Cal. March 26, 2007).

10        On the other hand, "'the party opposing the fee application
11   has a burden of rebuttal that requires submission of evidence to
12   the district court challenging the accuracy and the
13   reasonableness of the hours charged or the facts asserted by the
14   prevailing party in its submitted affidavits.'"  Aloha Airlines,
15   2007 WL 2320672, at *6 (quoting Gates v. Deukmejian, 987 F.2d
16   1392, 1397-98 (9th Cir. 1992)) (other citations omitted).

17        Without distinguishing between the Title VII action and the
18   class action, attorney Cook submitted an affidavit averring that
19   she spent 15.90 hours on this litigation in 1995, and 120.80
20   hours in 1997.  Mot. (doc. 335), exh. 2 thereto (Aff. of Rosemary
21   Cook (July 27, 2004)) at 2, ¶ 6.  Ms. Cook has "hand-written
22   notes for [her] time spent" in those two years.  Id.  Apparently
23   it is those notes which form the basis for the statement of
24   "Services Provided" attached to Ms. Cook's affidavit.  That
25   statement lists the dates on which Ms. Cook provided legal
26   services, the nature of those services, and the amount of time
27   expended in 1995 and 1997.  Based upon her hourly rate at that

28                                - 19 -

1  time of $145.00, plaintiffs are seeking a total of $19,821.50 in

2  fees for Ms. Cook's time in 1995 and 1997.

3      In contrast to 1995 and 1997, Ms. Cook  "no longer ha[s]

4  [her] hand-written notes for 1996." Id.  Consequently, Ms. Cook

5  is only able to aver that she "*believe[s]* that [she] spent at

6  least 100 hours on the case in 1996." Id. at ¶ 7 (emphasis

7  added).  Evidently Ms. Cook bases her belief upon the fact that

8  she "was responsible for all correspondence and pleadings in

9  1995, 1996, and 1997." Id. Ms. Cook further avers that she could

10  verify those hours if she "review[ed] the correspondence,

11  pleadings, and the discovery files[,]" but she did not do that.

12  Id.  Thus, based solely upon her "belief" that she spent 100

13  hours on "the case" in 1996, plaintiffs are seeking an additional

14  $14,500.00 in fees for Ms. Cook's time for that year.  See id.

15      Defendants challenge attorney Cook's 100 hour

16  "'estimate[,]'" pointing out that because she did not retain any

17  records for 1996, it is impossible "to verify" these hours, "let

18  alone evaluate what time was expended in the Title VII case

19  versus the class action case." See Resp. (Doc. 342) at 9.  Due

20  to this lack of supporting documentation, defendants assert that

21  the "the Court should exclude the $14,500" which plaintiffs are

22  seeking for the 100 hours of time Ms. Cook purportedly expended

23  during 1996.  See id.

24      Plaintiffs counter with an extremely cursory affidavit from

25  Ms. Cook.  In addition to "reaffirm[ing] [her] bill for services"

26  initially filed in support of this motion, Ms. Cook avers that

27  "[a]ll services" which she "performed were solely on the [Title

28

1   VII] claim[.]"  Reply (doc. 343), exh. A thereto (Aff. of
2   Rosemary Cook (Feb. 1, 2007) at 2, ¶¶ 1 and 2.  Ms. Cook stresses
3   that she "performed no work on any other issue."  Id. at 2, ¶ 2.
4   In any event, despite the complete lack of billing records for
5   1996, plaintiffs continue to assert that they are entitled to
6   recover $14,500.00 for the time attorney Cook purportedly spent
7   on this litigation in 1996.

8        Because, as previously noted, contemporaneous time records
9   are not essential for a fee award, the fact that attorney Cook
10  does not have such records is not a proper basis for denying fees
11  for the legal services she rendered in 1996.  See id.   But
12  plaintiffs did not "even [provide] 'minimal descriptions that
13  establish that [Ms. Cook's] time [in 1996] was spent on matters
14  on which th[is] . . . court may award fees[.]"  See Harris Farms,
15  97 FEP Cases at 1451 (citation omitted).  Nor did plaintiffs
16  satisfy this Circuit's lenient standard of "simply listing [Ms.
17  Cook's] hours and identifying the general subject matter of [her]
18  time expenditures[]" for her 1996 legal services.  See Fischer,
19  214 F.3d at 1121 (internal quotation marks and citations
20  omitted).  Attorney Cook's mere "belief" that she expended 100
21  hours on this litigation in 1996, without making any attempt to
22  identify the general subject matter of that time does not, by any
23  stretch of the imagination, constitute "evidence in support of
24  those hours worked."  See Welch, 480 F.3d at 948.

25       Plaintiffs' failure to provide adequate documentation of Ms.
26  Cook's 1996 time is perplexing given that it is permissible for
27  fee requests to "be based on reconstructed records developed by

28                              - 21 -

reference to litigation files[,]" <u>Fischer</u>, 214 F.3d at 1121
(internal quotation marks and citations omitted); and, in her
original supporting affidavit Ms. Cook indicated that she could,
"review the correspondence, pleadings, and the discovery files."
<u>See</u> Mot. (doc. 335). exh. 2 thereto at 2, ¶ 7. So presumably Ms.
Cook could have reconstructed her billing records for 1996.  For
whatever reason, however, she chose not to do that.

     Further, because plaintiffs did not provide any time records
whatsoever for Ms. Cook's hours in 1996, they did not comply with
the Local Rule mandating "adequate[] descri[ptions] [of] the
services rendered so that the reasonableness of the charges
c[ould] be evaluated."  LRCiv. 54.2(e)(2).  Nor did plaintiffs
submit a "task-based itemized statement of time expended[]" by
Ms. Cook in 1996 – another requirement of the Local Rules.  <u>See</u>
LRCiv. 54.2(d)(3).  Thus, because plaintiffs did not even come
close to meeting their burden of submitting evidence to support
the hours worked by attorney Cook in 1996, the court declines to
award plaintiffs $14,500.00 for the time she supposedly expended
on this action during that year.  However, because plaintiffs
have provided adequate documentation to support a fee award for
15.90 hours expended by attorney Cook in 1995 and for 120.80
hours expended by her in 1997, plaintiffs are entitled to her
fees for those two years, but not for 1996.  The fees for
attorney Cook's 1995 and 1997 time are subject to the one-third
reduction previously discussed for commingled time.  That is so
because despite Ms. Cook's assertion to the contrary, a number of
billing records, as well as the class action complaint which she

signed, show that she worked on both the Title VII and the class actions.

### 3. *Hourly Rate*

Defendants do not contest the hourly rates which plaintiffs are requesting. Resp. (doc. 342) at 4. After carefully reviewing the supporting affidavits, and based upon the court's own experience in this and similar litigation, it finds that the hourly rates sought for attorneys and paralegals, which range from $300[5] per hour to $70 hour, are reasonable. Further, the court finds that these rates are in accord with the "prevailing market rates" in this community for the relevant time period for lawyers and paralegals with "reasonably comparable skill, experience and reputation." See Carson, 470 F.3d at 891 and 892 (internal quotation marks and citations omitted).

### 4. *Additional Fees*

Plaintiffs also are seeking fees incurred since the filing of this motion, which includes time spent in preparing their Reply. The updated billing statement upon which plaintiffs are relying to support this additional fee award greatly varies from

---

[5]   The court is aware that plaintiffs agreed on a "contingency fee of . . . 1/3 or 40% after the discovery portion of the case had begun or . . . $300.00 . . . . an hour, whichever is greater." Aff. of Jess A. Lorona (Dec. 14, 2006) (doc. 336), at 2, ¶ 6; see also id., exh. A thereto (Aff. of George Rudebusch (Dec. 14, 2006) at 4, ¶ 3. The court is equally aware, however, that [w]hether or not [the client] agreed to pay a fee and in what amount is *not* decisive. . . . The criterion for the court is not what the parties agreed but what is reasonable." Jankey, 2006 WL 4569361, at *5 (internal quotation marks and citations omitted) (emphasis added). Thus, in the present case, even though plaintiffs did agree, under certain circumstances, to an hourly rate of $300.00, the court is not bound to make an across-the-board fee award at that rate. In fact, evidently due to variations in background and experience, while plaintiffs are seeking $300 per hour for most of the billing attorneys, they are not seeking that rate for every attorney who worked on this action.

1    their Reply.  Plaintiffs declare in their Reply that they are

2    seeking "$7,497.00[]" in fees,  doc. 343 at 5, whereas the

3    updated statement indicates that plaintiffs are seeking

4    "$67043.00 [sic]" in additional fees.  Id., exh. C thereto at 5.

5    A careful review of the hourly rates and services enumerated in

6    that statement, however, supports a finding that plaintiffs are

7    seeking fees of $7,239.50 for December 14, 2006 through February

8    7, 2007 – not $7,497.00 and certainly not $67,043.00.

9        As mentioned earlier, on February 18, 2003,"the Ninth

10   Circuit reversed the judgment in favor of Defendants in the Title

11   VII action and affirmed the defense judgment in the class

12   action."  Resp. (doc. 342) at 5 (citing doc. 259).  Thus, after

13   that date only the Title VII action continued to be litigated.

14   Defendants readily "agree[] that Plaintiffs are entitled to

15   reasonable fees from that point forward."  Id.  Likewise,

16   defendants do "not contest the number of hours or the hourly rate

17   claimed" for that time.  Id.

18       Given those concessions, and recognizing that "[t]ime billed

19   for litigating a fees motion is recoverable," Jankey, 2006 WL

20   4569361, at *5 n. 7 (citing Kinney v. Int'l Bros. Of Elec.

21   Workers, 939 F.2d 690, 695 (9th Cir. 1991)), after carefully

22   examining the updated billing statement, the court finds that the

23   hours expended by plaintiffs' counsel on this action between

24   December 14, 2006, and February 7, 2007 were reasonable.

25   Further, the court finds that the hourly rates billed during that

26   time period are also reasonable.  Accordingly, the record

27   supports an attorneys' fee award in the amount of $7,239.50 for

28                                  - 24 -

1  services rendered between December 14, 2006, and February 7,
2  2007.

3     To summarize, the court finds that plaintiffs are entitled
4  to $133,030.50 in attorneys' fees for legal services rendered
5  from February 18, 2003 through February 7, 2007.  Plaintiffs are
6  also entitled to recover $147,366.34 in attorneys' fees for the
7  "commingled" time, which includes attorney Cook's time in 1995
8  and 1997.  Additionally, plaintiffs are entitled to recover
9  $7,239.50 in attorneys' fees for legal services rendered between
10 December 14, 2006, and February 7, 2007.  The foregoing
11 represents a total award to plaintiffs' counsel  of attorneys fee
12 in the amount of $287,636.34.

13 **II.  Costs**

14    A "prevailing party may recover as part of the award of
15 attorney's fees those out-of-pocket expenses that would normally
16 be charged to a fee paying client."  Dang, 422 F.3d at 814
17 (internal quotation marks and citations omitted).  As with the
18 attorneys' fee award, "[s]uch out-of-pocket expenses are
19 recoverable when reasonable."  Id. (citations omitted).

20    Initially plaintiffs sought costs totaling $90,539.52.  For
21 reasons which they do not explain, in their Reply plaintiffs
22 reduced that amount to $47,256.18.  Reply (doc. 343) at 7.  That
23 total includes $21,679.77 in costs which plaintiffs incurred
24 since February 18, 2003, the date the Ninth Circuit issued its
25 mandate in this action.  Defendants do not object to those costs,
26 reasoning that as of that date "the class action was over," and
27 thus all subsequent costs necessarily pertained to the Title VII

28

1   action.  Reply (doc. 342) at 4.

2       Even with that concession, and the fact that plaintiffs have

3   reduced the amount of costs which they originally sought, a

4   nearly $18,000.00 difference remains between the amount which

5   plaintiffs are seeking in costs and the amount which defendants

6   believe is proper.  More specifically, plaintiffs claim that they

7   are entitled to $47,256.18 in costs, whereas defendants claim the

8   amount is "not greater than $29,331.17."  Resp. (doc. 342) at 1.

9   Obviously then there are still disputed cost issues.

10      The first such issue need not detain the court for long.

11  Initially plaintiffs sought costs totaling $90,539.52, although

12  as defendants note plaintiffs' supporting affidavits and exhibits

13  only establish costs in the amount of $85,539.52.  Id. at 13.

14  That discrepancy is because plaintiffs "mistakenly omitted[]" a

15  $5,000.00 billing statement from a certified public accountant

16  ("CPA") whom they retained to handle the taxes and judgment.

17  Reply (doc. 343) at 6.  The record has since been supplemented

18  with that statement.  See id., exh. D thereto.  Thus, to the

19  extent defendants are seeking to reduce any award of costs by

20  $5,000.00 due to lack of supporting documentation, that objection

21  is rendered moot because plaintiffs have supplemented the record.

22  Primarily because defendants agree  that plaintiffs are entitled

23  to costs from February 18, 2003, forward, and because the CPA's

24  costs were incurred during that time frame (on October 11, 2006),

25  plaintiffs are entitled to recover the $5,000.00 in costs which

26  they are seeking for his services.  See Reply (doc. 343), exh. D

27  thereto at 2.

28                          - 26 -

### A.   Plaintiff Rudebusch

There is validity though to defendants' next challenge to the costs which plaintiffs are seeking.  Plaintiffs claim that they are entitled to recover $36,960.00 for "consulting services" provided by the named plaintiff, George Rudebusch.  See Doc. 336, exh. 12 thereto (Aff. of George Rudebusch (Dec. 14, 2006) at 1, ¶ 4), and attachment.  Defendants make a compelling argument as to why this cost is not recoverable.  See Doc. 342 at 13-14.  There is no need to detail that argument herein because evidently plaintiffs agree, given that conspicuously absent from their Reply and supplemental exhibits is any mention of recovering costs for plaintiff Rudebusch's "consulting services."  Thus, the court deems this aspect of plaintiffs' motion withdrawn.  Hence it declines to award plaintiffs any costs for plaintiff's Rudebusch's "consulting services."

### B.   Expert Witness Michael Wagner

It appears that originally plaintiffs were seeking $19,708.71 for services provided by "Mike Wagner Consulting[,]" but nowhere did they explain the nature of those services.   Doc. 336, exh. 9 thereto.  The invoices provide no insight as they simply reference prior "unpaid invoices," and then include demands for "past due interest."  See id.

Defendants' main objection to Wagner's invoices is that it is "impossible" to discern "how much of the bill is interest, and how much is principle [sic][,]" i.e. fees for his services. Resp. (doc. 342) at 14.  Defendants go on to argue that "[i]nterest charges . . . are not reasonable litigation

1    expenses." Id. at 15.  Further, given that "[p]laintiffs have

2    not provided information regarding the actual fees Mr. Wagner

3    charged," defendants assert that "the Court should decline to

4    award Plaintiffs expert fees" for Mr. Wagner.  Id.

5        Plaintiffs responded to this argument by submitting another

6    invoice from Mr. Wagner.  It is dated January 30, 2007, and

7    indicates a "total due" of $6,100.00, which represents four hours

8    for "[p]reparation of [an] affidavit[,]" at $100 per hour; and 57

9    hours of "[s]tatistical consulting," also at $100 per hour.

10   Reply (doc. 343), exh. E thereto.  As plaintiffs acknowledge,

11   however, Mr. Wagner "does not set forth the dates that he

12   provided th[os]e services or any further detail.  Id. at 6.

13   Under "[d]ate of [s]ervice" that invoice simply states "various."

14   Id.  Perhaps for that reason, in their final calculation of

15   costs, plaintiffs reduced by five percent the amount requested

16   for Mr. Wagner's services, so that they are seeking $5,795.00 for

17   his time.  See id. at 7.

18       Mr. Wagner's prior invoices specifically indicate December

19   21, 2000 and August 15, 2003, as "[d]ate[s] of [s]ervice[.]"

20   Mot. (doc. 335), exh. 9 thereto.  Thus, it is evident that Mr.

21   Wagner rendered services in connection with both the Title VII

22   and class actions.  As with many of plaintiffs' attorneys'

23   billings, however, it is impossible to distinguish the amount of

24   time which is attributable to the successful Title VII action,

25   and that which is attributable to the unsuccessful class action.

26   Accordingly, as it did for the commingled attorneys' fee time,

27   the court  will reduce Mr. Wagner's fee of $6,100.00 by one-third

28
                                  - 28 -

1    (or $2,033.33).  This means that plaintiffs are entitled to costs

2    for Mr. Wagner's time in the amount of $4,066.67.

3        ### C.  *"Commingled" Costs*

4        As to the commingled costs, defendants are once again

5    seeking a 50% reduction.  This means that of the $15,302.80 in

6    costs which defendants admit are "reasonably attribut[able] to

7    both cases," plaintiffs should only recover $7,651.40.  Resp.

8    (doc. 342) at 15.

9        Plaintiffs retort that they should recover the full

10   $5,275.00 which they are seeking for the costs of trial

11   transcripts.  As to the other commingled costs, however

12   plaintiffs suggest a five percent reduction like they did for the

13   commingled attorneys' fee time.  Plaintiffs figure a total of

14   $9,506.41 for these commingled costs.  See Reply (doc. 343) at 1.

15       For consistency, the court will continue to apply a one-

16   third reduction for these commingled costs, including for the

17   cost of the transcript.  The end result is that of the $15,302.80

18   which plaintiffs are seeking in commingled costs, they are

19   entitled to recover $10,201.87.  Even though plaintiffs did not

20   mention it in their Reply, the court will add to the recoverable

21   costs the $415.88 which plaintiffs' billing statement indicates

22   they incurred from December 16, 2006, through January 30, 2007.

23   See Reply (doc. 343), exh. C thereto at 9.

24       In summary, plaintiffs are entitled to $21,679.77 for costs

25   incurred from February 18, 2003, through the filing of this

26   motion.  Likewise, plaintiffs are entitled to $5,000.00 in costs

27   for the CPA which they retained in October 2006 to review the

28                              - 29 -

settlement in the Title VII action.  Plaintiffs are entitled to
an additional $415.88 for costs incurred from December 14, 2006
through January 30, 2007.  They are also entitled to costs of
$4,066.67 for services rendered by Mr. Wagner.  Finally,
plaintiffs are entitled to $10,201.87 for commingled costs.  The
sum total of the cost award to plaintiffs is $41,364.19.

### *Conclusion*

For the reasons set forth above, IT IS ORDERED that
plaintiffs' motion for attorneys' fees and costs (doc. 335) is
GRANTED in the amount of $287,636.34 in attorneys' fees; and
$41,364.19 in costs; and

IT IS FURTHER ORDERED that defendants shall pay those
amounts to plaintiffs within thirty (30) days of the date of this
Order.

DATED this 20th day of September, 2007.


Robert C. Broomfield
Senior United States District Judge


Copies to all counsel of record

- 30 -